JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Harleysville Insurance Company of Ohio ("Harleysville"), appeals the trial court's decision in denying its motion for summary judgment and granting the motion for summary judgment of the appellee, Ohio Township Association Risk Management Authority ("OTARMA"), concerning various uninsured/underinsured motorist ("UM/UIM") insurance coverage issues pursuant to the rationale of Scott-Pontzer.[1]
 {¶ 2} On May 6, 2000, Brian, Heather, Shawn, and Justin Barrett ("the Barretts") were traveling southbound on Puritas Avenue in a vehicle driven by Brian when it collided with a vehicle operated by Terrence Juhn. The Barretts claimed the motor vehicle accident was caused by the negligence of Juhn. The Barretts executed a written release and settled their claims against Juhn in exchange for his insurance policy liability limits of $12,500 per person, $25,000 per accident.
 {¶ 3} The Barretts were also insured by a personal automobile policy issued by Harleysville. The policy provided uninsured/underinsured motorist coverage in the amount of $100,000 per person, $300,000 per accident. The policy also contained medical payment coverage in the amount of $5,000 per person.
 {¶ 4} At the time of the accident, Heather Barrett was employed by Hinckley Township, which had a "Legal Defense and Claim Payment Agreement" (the "agreement") issued by OTARMA. The OTARMA is a local government risk pool established under R.C.2744.081. This agreement provided motor vehicle liability coverage in the amount of $5,000,000 and UM/UIM coverage in the amount of $100,000.
 {¶ 5} Heather Barrett testified in her deposition that, although she was employed by Hinckley Township, she was not acting on behalf of or in the interests of Hinckley Township at the time of the accident. Furthermore, the automobile Brian Barrett was driving at the time of the accident was not owned, hired, or borrowed by Hinckley Township.
 {¶ 6} The Barretts filed a complaint against Harleysville and sought underinsured motorist and medical coverage for the damages they sustained in the May 6 accident. Harleysville filed an answer with a counterclaim for declaratory judgment and a third-party complaint for declaratory judgment against OTARMA and Reliance Insurance Company. Reliance Insurance subsequently became insolvent and was voluntarily dismissed from this action.
 {¶ 7} Harleysville's third-party complaint against OTARMA sought declaratory judgment to establish the rights and obligations of all parties with respect to the Barretts' claims. Harleysville alleged in its third-party complaint that its insurance policy requires a comparison and/or proration to policies of insurance provided by OTARMA. Specifically, Harleysville claims that the Barretts, through Heather Barrett's employment with Hinckley Township, are entitled to UIM coverage under the agreement issued by OTARMA to Hinckley Township pursuant to the rationale of Scott-Pontzer.
 {¶ 8} OTARMA filed an answer to the third-party complaint with a counterclaim against the Barretts and Harleysville. Harleysville settled with the Barretts for $104,000 prior to filing its motion for summary judgement. Harleysville and OTARMA filed cross motions for summary judgment. The trial court granted OTARMA's motion and denied Harleysville's motion. Thereafter, the Barretts voluntarily dismissed their suit with prejudice.
 {¶ 9} Harleysville brings this timely appeal, based on the trial court's grant of summary judgment, and presents three assignments of error for review:
"I. The trial court erred in granting the motion for summary judgment filed by appellee and denying the motion for summary judgment filed by appellant of the issues of whether appellee owed underinsured motorist coverage to Mr. and Mrs. Barrett."
"II. The trial court erred in failing to rule that the underinsured motorist coverage owed by appellee to Mr. and Mrs. Barrett was primary and pro-rata with the underinsured motorist coverage afforded to the Barretts under the personal automobile policy issued to them."
"III. The trial court erred by not granting appellant leave to complete discovery on the issues of notice and prejudice."
 {¶ 10} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 11} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356.
 {¶ 12} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina Ltd. of Texas
(1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying thoseportions of the record which demonstrate the absence of a genuineissue of fact or material element of the nonmoving party'sclaim." (Emphasis in the original.) Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 13} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741.
 {¶ 14} Appellant Harleysville asserts that the Barretts are afforded UM/UIM coverage pursuant to the Ohio Supreme Court's ruling in Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660. In Scott-Pontzer, the Supreme Court of Ohio determined that a commercial automobile policy issued toSuperior Dairy, Inc. provided benefits to Kathryn, the surviving spouse of Christopher Pontzer. Pontzer was an employee of Superior Dairy, not in the scope of his employment, when he was killed in an automobile accident caused by the negligence of another motorist. The commercial automobile policy issued to the corporation designated Superior Dairy, Inc. as the named insured, and the underinsured motorists section included the following definition of insured:
 {¶ 15} "B. Who Is An Insured
 {¶ 16} "1. You.
 {¶ 17} "2. If you are an individual, any family member.
 {¶ 18} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 19} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
 {¶ 20} The Ohio Supreme Court concluded that the above definition of "insured" was ambiguous in that the term "you" could be construed to include the corporation's employees because a corporation can act only by and through real live persons and cannot suffer bodily injury. Employing the legal principle that ambiguous provisions in an insurance contract will be construed against the insurer, the court concluded that Pontzer was an insured at the time of his death under the underinsured motorists provision of the commercial automobile policy issued to Superior Dairy, Inc.
 {¶ 21} The Ohio Supreme Court's recent ruling in WestfieldIns. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, limited the holding of Scott-Pontzer and overruled the holding inEzawa v. Yasuda Fire Marine Ins. Co. of Am. (1999),86 Ohio St.3d 557, 715 N.E.2d 1142.
 {¶ 22} In Galatis, the Ohio Supreme Court held, "Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorists coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of the employment. Additionally, where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as `other insureds' does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured." Id. at ¶ 62.
 {¶ 23} In the instant case, we disagree with the appellant's assertion that the Barretts are entitled to UIM coverage pursuant to the holding in Scott-Pontzer as limited by Galatis. OTARMA is a local government risk pool established under R.C. 2744.081
and is not subject to the insurance laws of this state. Ross v.Farmers Ins. Group of Cos. (1997), 82 Ohio St.3d 281,695 N.E.2d 732, provides that for purposes of determining the scope of coverage of a UM/UIM claim, the statutory law in effect at the time of entering into a contract for insurance controls the rights and duties of the contracting parties.
 {¶ 24} In the instant matter, the OTARMA agreement was executed on June 16, 1999. According to R.C. 3937.18, as amended by H.B. 261, effective September 3, 1997, every automobile policy must be accompanied by an offer of UM/UIM or this coverage arises by operation of law. "R.C. 3937.18 applies to any `automobile liability or motor vehicle liability policy of insurance.' Thus `where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided.'"Caton v. Bd. of Commrs. of Muskingum Cty., Muskingum App. No. CT2002-0038, 2003-Ohio-2292 at ¶ 15, citing Selander v. ErieIns. Group (1999), 85 Ohio St.3d 541, 544, 709 N.E.2d 1161.
 {¶ 25} However, local government risk pools established under R.C. 2744.081, including OTARMA, are not governed by Ohio's insurance laws. See R.C. 2744.081(E)(2); see, also, Caton v.Muskingum Cty. Bd. of Commrs., supra.; Ohio Govt. Risk Mgt.Plan v. Cty. Risk Sharing Auth., Inc. (1998),130 Ohio App.3d 174, 180; Pub. Entities Pool v. Sexton (Mar. 31, 2000), Montgomery App. No. 17849, appeal denied, 89 Ohio St.3d 1470;McClelland v. Clemson Trucking, Inc. (Sept. 4, 1998), Geauga App. No. 97-G-2077, appeal denied, 84 Ohio St.3d 1470; Adams v.Thomson Newspapers, Inc. (Nov. 25, 1996), Scioto App. No. 95 CA 2357, appeal denied, 78 Ohio St.3d 1463.
 {¶ 26} R.C. 2744.081(E)(2) clearly states this principle: "A joint self-insurance pool is not an insurance company. Its operation does not constitute doing an insurance business and is not subject to the insurance laws of this state."
 {¶ 27} The court in Sexton, supra, held that because a self-insurance pool is not an insurance company engaged in an insurance business, the benefits they offer their members are seemingly outside the definition of automobile liability or motor vehicle liability policies of insurance in R.C. 3927.18(A). If so, the UM/UIM requirements imposed by R.C. 3937.18(A) do not apply to liability coverage offered by self-insurance pools organized pursuant to R.C. 2744.081(A). Adams v. Cty. RiskSharing Auth., Inc. (Nov. 25, 1996), Scioto App. No. 2357, unreported.
 {¶ 28} Any doubt whether the section might require self-insurance pools to offer UM/UIM coverage is foreclosed by the final clause of R.C. 2744.081(E)(2), which declares that they are "not subject to the insurance laws of this state." R.C.3937.18 is such a law. See, also, Caton, supra, at ¶ 18.
 {¶ 29} In addition, the equivalency requirements of R.C.3937.18(A) cannot apply if R.C. 3937.18(A) does not apply. Therefore, if a self-insurer or pool is organized according to R.C. 2744.081, it need not offer UM/UIM coverage equivalent to the policy's liability coverage. Furthermore, because a self-insurer or a risk pool is not subject to R.C. 3937.18, which provides the basis for Scott-Pontzer as limited by the holding in Galatis, the reasoning found in Scott-Pontzer does not apply to self-insureds or to risk pools organized under R.C.2744.081.
 {¶ 30} In the instant matter, Michael Sutton is the Executive Vice President of American Risk Pooling Consultants, Inc. and the administrator for both the Ohio Township Association Risk Management Authority ("OTARMA") and the Public Entities Pool of Ohio. He stated in an affidavit that OTARMA is a local government risk pool established pursuant to R.C. 2744.081. He further stated that OTARMA has complied with all requirements to be a local government risk pool, and Hinckley Township is a member of OTARMA.
 {¶ 31} We find that OTARMA is a local government risk pool established under R.C. 2744.081; therefore, the agreement is not a policy of insurance subject to the uninsured motorist requirements found in R.C. 3937.18, nor is it subject to the rationale of Scott-Pontzer as limited by Galatis.
 {¶ 32} Last, when examining the policy language of the agreement issued by the OTARMA, we find that neither Heather Barrett nor her family was entitled to any coverage arising from the May 6, 2000 accident. Therefore, the appellant is not entitled to coverage that would lead to any contribution or set off from OTARMA.
 {¶ 33} Appellant's second and third assignments of error are hereby rendered moot in light of our holding.
 {¶ 34} The judgment is affirmed.
Judgment affirmed.
Diane Karpinski and Sean C. Gallagher, JJ., concur.
It is ordered that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.